# CHARLESTON.

J. G. WHITE v. COUNTY COURT OF MINGO COUNTY

· (No. 6072.)

Submitted March 6, 1928.    Decided March 13, 1928.

COUNTIES—*Sheriff's Refusal to Pay Draft Issued to Contractors for Road Work Held Not to Give Contractors Action Against County on Quantum Meruit (Acts 1921, c. 112, § 152).*

A fund was provided for the building of a county district road and placed in the hands of the sheriff. The construction of the road was contracted for, payment to be made in monthly installments. While the work was in progress and before the fund therefor was exhausted the sheriff refused to pay a draft issued to the contractors as an installment due on the work, stating that no funds would be available for that purpose for several months. The contractors then declared the contract terminated and sued the county court on a *quantum meruit.* Held: their action is untenable. *Ratcliffe* v. *County Court*, 36 W. Va. 202.

(Counties, 15 C. J. § 255.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by J. G. White and others against the County Court of Mingo County. Judgment for plaintiffs, and defendant brings error.

*Reversed and dismissed.*

*Lafe Chafin* and *G. W. Crawford*, for plaintiff in error.
*H. E. De Jarnett*, for defendants in error.

HATCHER, JUDGE:

The plaintiffs herein agreed to build a certain road in Mingo County according to plans and specifications contained in a written contract dated February 8, 1926, and the defendant agreed to pay for the work at prices named therein "in the manner prescribed by section 152, of Chapter 112 of the Acts of the Legislature of 1921". The location of the road was completely changed for one-fourth of a mile after the contract was made, entailing extra cost for grading. As the work progressed the engineer of the county court made monthly estimates of the value of the work done, deducting therefrom 10% to be retained by the county court until the work was completed (a provision in the contract), and drafts on the sheriff for the balances were issued to the contractors. These drafts were promptly paid until the one for eptember, 1926, was presented, which the sheriff refused to pay on the ground that no funds were in his hands available for that purpose. The plaintiffs stated to the defendant that they could not proceed with the work unles their drafts were paid. Thereupon the defendant arranged to have the September draft cashed by a local bank, and paid the discount charged therefor. The draft for October was paid by the sheriff—but after he had withheld payment a week. The draft for November was presenteo to him on December 21, 1926. He refused payment, stating that no funds would be available to pay that draft until March, 1927. A few days later the defendant and the plaintiffs jointly attempted to have the sheriff honor the draft, and upon his refusal the plaintiffs ceased work. On December 30, 1926, they notified the defendant that they considered the contract terminated. The defendant refused to accede to their view, and advised them accordingly. On January 10, 1927, the sheriff had a change of heart and paid the drafts of December 21st, but plaintiffs did not resume work.

This action was brought in April, 1927, to recover the balance unpaid on the work actually done, together with the charge of a private engineer for making a final estimate of the work. The case was submitted on an agreed statement of

facts upon which a judgment of $17,403.91 was rendered for plaintiffs, the circuit court finding as follows:

> "First: That the contract in this cause entered into between the plaintiffs and defendant was broken and violated by the defendant by reason of the failure of the sheriff of Mingo County to pay the draft issued by the defendant on the 21st day of December, 1926. * * *
>
> "Second: That the plaintiffs are not entitled to recover any extra compensation by reason of the change in the location of the highway. * * *
>
> "Third: That the plaintiffs are not entitled to compensation or reimbursement for the sum of money paid to Fred luss, engineer, for making up the estimate of the work done by them on the highway."

The contention of plaintiffs is that in making the contract the defendant simply represented Mingo County and the county is the real party in interest therein; that the defendant and the sheriff are co-ordinate agents of the county; that the default of the sheriff is the default of the county; that "a dishonored draft is no more actual payment than a dishonored check would be, but under the contract the plaintiffs were entitled to their monthly payments in money rather than successive law-suits against the sheriff"; that "to hold otherwise would be to say that the contractor must go on from month to month performing thousands of dollars worth of work and receive only barren orders or law-suits therefor"; that "this doctrine would hold the contractor not surety for the sheriff, but surety for the various depositories for the county funds"; and that "if the county funds applicable to the payment for this contract were either embezzled by the sheriff or lost through the insolvency of the bank, then the contractor must continue to work and furnish material with no prospective paymeht tnerefor."

Section 152 referred to in the contract is as follows:

> "All claims of any contractor or contractors or others, which may under the provisions of this act be due to such contractor or contractors or other persons for labor due or materials furnished in

> and about the construction or improvement of county-district roads, shall, when certified by the county road engineer, be presented to the county court at the proper session thereof, and if by it found correct, shall, upon the order or warrant of said court, signed by the president and clerk thereof, be paid by the sheriff.''

The funds for building this road had been raised by a bond issue and were in the hands of the sheriff at the time the work was started. The plaintiffs stipulate that he should have had sufficient money at all times to pay the drafts issued to them, unless he had misappropriated the funds provided for that purpose. The default of which the plaintiffs complain is therefore that of the sheriff and not that of the defendant. The latter promptly performed its obligations under the contract in every particular. It had no money at its immediate disposal. The only method by which it could meet its obligations to plaintiffs was to issue drafts on the sheriff. It did not guarantee the payment of the drafts, neither could it coerce the sheriff into paying them. The plaintiffs knew when they entered into the contract that he was both custodian and paymaster of the road funds, and that they would have to look to him for payments therefrom.

The agreed statement of facts shows neither justification nor excuse for the sheriff's conduct. The plaintiffs could have required him to indorse the draft when payment was refused, and from that date the draft would have drawn legal interest. See section 39, Chapter 39, Code. The statute further provides that when a sheriff having funds to pay a proper draft (as in this case) fails to do so, he and his sureties become loable not only for the draft with legal interest, but also for 10% of the amount of the draft as damages. The plaintiffs certainly should have had no trouble securing a purchaser for a draft commanding such a return. The record, however, shows no request of the sheriff to indorse the draft and no attempt to secure money on the draft other than by presentation to the sheriff. His refusal to pay the draft when presented gave them a right of immediate action against him. ''When the county court has provided a fund in the hands

of the sheriff, ex-officio the county treasurer, for the payment of claims against the county, and has caused to be issued and delivered to the creditor an order for his claim in form or effect as provided in section 37, Chapter 39 of the Code, and the sheriff, without fault on the part of the court, fails or refuses to pay the order, the creditor's remedy is against the sheriff." *Ratcliffe* v. *County Court,* 36 W. Va. 202. The failure of plaintiffs to pursue their remedies against him, or to show that such pursuit would have been fruitless, and their omission to seek cash on the draft from the money changers, sap the strength of their position. Their contention of hardship and necessary cessation from work because of inability to procure money on their drafts, is without sustaining facts. We are, therefore, of opinion that the ruling of the circuit court in their favor is error.

The contract confers on the engineer of the defendant the right to say (in the first instance) when the plaintiffs have completed the contract, and to certify to the defendant from actual measurement the whole amount of work done and the value of such work under the contract. The plaintiffs have not completed the contract and are not warranted in treating it as terminated. Therefore, they have no right to recover from the defendant the charges of a private engineer employed by them to make a final estimate.

For like reason they are not entitled to recover now extra remuneration for the increased cost of grading the part of the road which was changed from the original location. But when the contract is completed and defendant's engineer has calculated and certified the value of the work done upon the changed location, the defendant should bear in mind that the contract in regard thereto is to be construed according to its *fair intent* rather than according to its strict letter.

The judgment of the circuit court is reversed, and the action dismissed.

*Reversed and dismissed*